UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| ROBERT PRESLEY, | ) | |
| Plaintiff, | ) ) | Civil Action No. 6: 22-107-DCR |
| V. | ) ) | |
| NURSE FREE, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Robert Presley filed a *pro se* Complaint on May 4, 2022, alleging that Defendant "Nurse Free" was deliberately indifferent to his serious medical needs while he was incarcerated at USP McCreary in Pine Knot, Kentucky. *See Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). The United States entered an appearance on behalf of Nurse Free and filed a motion to dismiss the Complaint on November 2, 2022. The following month, mail previously sent to Presley was returned to the Clerk of the Court as undeliverable and a subsequent search of the Bureau of Prisons (BOP) website indicated that Presley had passed away. The Court denied Free's motion to dismiss, without prejudice, and directed the United States Attorney's Office to file a formal suggestion of death and attempt to serve it upon Presley's mother, who the BOP identified as his next of kin. The United States also was instructed to notify Presley's mother of the pendency of this lawsuit.

Free tendered a status report on March 7, 2023, indicating that the government served the following documents upon Presley's mother on February 1, 2023: a formal suggestion of Presley's death and a notice briefly describing Presley's pending claims against Free. [Record

No. 38] The United States took the position that the matter should be dismissed if Presley's mother failed to file a motion to substitute pursuant to Rule 25 of the Federal Rules of Civil Procedure on or before May 2, 2023.

Attorney Calvita Frederick filed a motion to appear *pro hac vice* (PHV) on April 27, 2023, indicating that she had been retained by Presley's mother to represent Presley's interests in this matter. [Record No. 39] Permission to practice in a particular case is governed by Local Rule of Civil Practice 83.2. It provides:

> An attorney who has not been admitted to the Bar of the Court may represent parties before the Court if the attorney has paid the prescribed *pro hac vice* admission fee to the Clerk of the Court and been granted leave by the Court to appear *pro hac vice* in a particular case. A separate motion for each attorney requesting *pro hac vice* admission must include the following information:
>
> (1) Admission Status. The motion must identify each Bar in which the attorney is a member and include a statement indicating that the attorney requesting admission is admitted to practice, currently in active status, and in good standing as an attorney in another United States court or the highest court of any state.
>
> (2) Disciplinary History. The motion must disclose whether the attorney is currently or has ever been disbarred, suspended from practice, or subject to other disciplinary action by any court, Bar, or other admitting or licensing authority.
>
> (3) Consent to Jurisdiction. The motion must include a statement indicating that the attorney consents to be subject to the jurisdiction and rules of the Kentucky Supreme Court governing professional conduct.
>
> (4) ECF Training. The motion must identify the method of training completed by the attorney before use of the Court's electronic filing system.

In disclosing her disciplinary history, attorney Frederick reported: "On December 30, 2022, [she] was publicly reprimanded for improper conduct in the case *Outley v. City of*

*Chicago, et al.*, 2017 CV 8633, and she was referred to the Executive Committee for potential discipline. To date no discipline has been issued."[1] [Record No. 39 ¶ 6]

Permission to appear *pro hac vice* is a privilege, the granting of which is within the sound the discretion of the presiding judge. *D.H. Overmyer Co., Inc. v. Robson*, 750 F.2d 31, 34 (6th Cir. 1984) (citing *Thomas v. Cassidy*, 249 F.2d 91) (4th Cir. 1957) (per curiam), *cert. denied*, 355 U.S. 958 (1958). Attorneys seeking PHV admission in this district must agree to abide by the rules of the Kentucky Supreme Court governing professional conduct. Among these rules are providing competent representation to clients and acting with reasonable diligence and promptness in representing clients. Ky. S. Ct. R. 3.130(1.1), (1.3). Lawyers also have a duty to refrain from bringing frivolous proceedings or asserting frivolous issues and to refrain from dilatory practices. Ky. S. Ct. R. 3.130(3.1), (3.2). Additionally, lawyers are prohibited from knowingly disobeying the rules of court; making frivolous discovery requests or deliberately failing to comply with proper discovery requests by an opposing party; and, in trial, alluding to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence. Ky. S. Ct. R. 3.130(3.4).

The Court begins its analysis by examining the case cited in Frederick's PHV motion, *Outley v. City of Chicago*, 1: 17-CV-8633 (N.D. Ill.). United States District Judge Gary Feinerman presided over the matter in which Frederick represented Plaintiff Michael Outley in asserting employment discrimination claims against the city of Chicago and certain city

---

[1] The Executive Committee is the disciplinary committee of the United States District Court for the Northern District of Illinois. N.D. Ill. LR 83.25(b).

officials. Here are a few examples of Frederick's performance in *Outley*, as explained in that court's opinions.

Frederick filed a motion for leave to file 20 motions *in limine* four weeks after the deadline for doing so expired *and* four weeks after she informed the defendants' counsel that the plaintiff would not be filing such motions. *Outley v. Chicago*, 2022 WL 4448739 (N.D. Ill. Sept. 23, 2022). The court denied the motion and, eight days later, Frederick filed a motion asking the court to take judicial notice of numerous exhibits that were encompassed by her untimely motions *in limine*. Frederick advised the court she required a ruling on the motion to take judicial notice within five days. When the court had not issued a decision by Frederick's "deadline," she accused the court of unduly delaying its ruling. The court ultimately denied the motion, noting that Outley's case had been "severely damaged by [Frederick's] many failures to do what she needed to do to properly represent him…."[2] *Id.* at *8.

The matter was set for trial on September 23, 2022. Again, quoting from the opinion, it is a "substantial understatement" to say that "things did not go smoothly." *Outley*, -- F.Supp.3d--, 2022 WL 18027557, *1 (N.D. Ill. Dec. 30, 2022). Judge Feinerman attributed the problems entirely to Frederick, who "turned in the poorest performance by an attorney that [Feinerman had] seen during his 12-plus years on the bench." *Id.* During the final pretrial conference, the judge noted that dismissal for failure to prosecute probably would have been

---

[2]   Nineteen days after this ruling, Frederick filed an 86-page Complaint on behalf of Outley suing *Judge Feinerman* and the city officials, alleging, *inter alia*, that the judge had violated Outley's due process rights in the underlying case. 1: 22-CV-5583 (N.D. Ill. Oct. 12, 2022). Following dismissal of the original case, the case against Judge Feinerman was dismissed for lack of subject matter jurisdiction. Frederick was subsequently permitted to withdraw after Outley terminated the attorney-client relationship. [*See* Record No. 28-1.] A motion for sanctions under 28 U.S.C. § 1927 against Frederick filed by the city official defendants remains pending.

within his discretion.  Frederick proceeded to make "a series of intemperate remarks," including:

> It amazes me how in this -- in this jurisdiction -- and I'm just venting here for a minute. In this jurisdiction, a judge can set a court case for a ruling and not be ready and kick it another two months, and that's just fine; but if a -- if a counsel needs a couple of extra weeks, it's -- they get ripped a new butthole and their case is very close to dismissed. It just -- it just amazes me how that happens over and over and over. I am the scum of the Earth and think -- and I'm crazy because I missed a court deadline; but -- and I can't say for sure, but if you're not, you're one of the few who hasn't set a date for a ruling and kicked it another two months because they just weren't ready.
>
> We didn't dot every "i" didn't cross every "t" on time, but we did -- we have not blown off preparing for this case. We just ran late, as you do and every other judge in this jurisdiction and every other major law firm in this jurisdiction does from time to time. But when a solo practitioner does it, they rip me a new butthole. And talk about how -- are you kidding? Failure to prosecute this case? Are you kidding?

Following the court's denial of the plaintiff's motion seeking a stay, trial commenced as scheduled. Then, in the presence of the jury and in direct violation of the court's *in limine* rulings, Frederick repeatedly referred to claims that had been dismissed and evidence that had been excluded. *Id*. at *7. When reprimanded by the court, Frederick alternatively explained that she had not read the *in limine* rulings and that she *had* read them but "just [didn't] remember what they are right now." *Id.* at *7-8. She also told the judge: "I'm dealing with personal health issues and concentration issues like I've never had…. So, in the midst of all of this, I'm trying to make sure I don't get sick because I've got two kids in college that still need me, *which is why I fought so hard to get the trial continued because I'm just physically, mentally, emotionally not up to it*." *Id.* at *10 (emphasis in original). The court inquired whether Frederick had ever sought a continuance for those reasons as opposed to arguing that the court was violating the plaintiff's due process rights in not continuing the trial. Frederick

- 5 -

acknowledged that she had not, stating that she had been in a "different mindset" when she made the due process claims. *Id.* Ultimately, Judge Feinerman determined that a curative instruction would be insufficient and declared a mistrial.

Following the mistrial, the court dismissed the case with prejudice, sanctioned Frederick under Rule 11(b) of the Federal Rules of Civil Procedure, and referred her to the Northern District of Illinois Executive Committee for potential discipline. Judge Feinerman further noted that Frederick has a history of disciplinary issues, bringing frivolous claims, and failing to meet deadlines in the Northern District of Illinois and the Seventh Circuit. *Id.* at *17 (collecting cases). More specifically, the court noted that Frederick had "demonstrated a penchant of baselessly accusing judges in [the Northern District of Illinois] of bias when things do not go her way." *Id.* at *20 (citing *Mallory v. Rush Univ. Med. Ctr.*, 2021 WL 458547, at *6-7 (N.D. Ill. Feb. 9, 2021); *Kuczaty v. Willowbrook Ford, Inc.*, No. 1: 21-CV-2551 (N.D. Ill. Apr. 3, 2022) (in a motion to recuse, Frederick suggested that District Judge Ellis used the term "mulligan" as an "ethnic slur," which reflected bias against Frederick).

Notwithstanding the collection of cases cited in the most recent *Outley* opinion, this Court has conducted its own research regarding attorney Frederick's prior case participation, both as an attorney and litigant. In sum, Frederick has displayed a unwillingness to follow rules and court orders in multiple cases over a significant period.

In *Anderson v. UPS*, 1989 WL 122307 (N.D. Ill. Oct. 6, 1989), Frederick represented employees who alleged that United Parcel Service had illegally passed them over for promotions because of their race. UPS filed a motion for summary judgment and the plaintiffs responded late and "with not one citation to the record," in violation of the local rules. *Id.* at *2. The court granted summary judgment with respect to the plaintiffs' claims under Title VII

and noted alternatively that dismissal of all claims was appropriate based on the plaintiffs' failure to comply with the court's scheduling and pretrial orders. The decision was affirmed in *Anderson v. UPS,* 915 F.2d 313 (7th Cir. 1990), where the Seventh Circuit agreed that the case had been marked by the plaintiffs' dilatory tactics and noted that, "at one point, the plaintiffs' counsel even accused the defendant's counsel of racism." *Id.* at 314. In the end, dismissal was warranted in light of counsel's "endless delays." *Id.* at 316.

In *Young v. Control Solutions, LLC*, 2017 WL 2633679 (N.D. Ill. June 19, 2017), the court noted that the plaintiff's memorandum in response to summary judgment violated the local rules regarding length and spacing. Specifically, Frederick submitted a brief that was 17 pages long and had line spacing of 1.49, "hiding the fact that her memorandum, when properly formatted, would have been at least 33% longer than the rules allow." Frederick also violated Local Rule 56.1(d)(5) by including too many numbered paragraphs in her statement of additional facts. The filing also was made 22 minutes after the deadline for doing so. *Id.* *1.

In addition to simply failing to follow court directives and deadlines, Frederick routinely seeks extensions of time, often at the eleventh hour. In *Liner v. FCA US LLC*, 333 F.R.D. 122 (N.D. Ill. 2019), she asked for a 60-day extension 11 days prior to the expiration of the discovery deadline. Among the reasons cited were her heavy workload and that she was a solo practitioner. She also reported having been attacked by a neighbor's dog and told the court that she was a "single mother whose two daughters recently went off to college." The court granted the motion for an extension, "given [Frederick's] medical difficulties," but advised that "[c]ourts cannot make special rules for solo practitioners." *Id.* at 125, 127 n.2. In a significant lack of courtesy to the court, she failed to provide notice of the resolution of nearly two dozen discovery issues she had asked the court to resolve. *Id.* at 128. Matters did not

improve at the summary judgment stage. Frederick failed to include a statement of facts section in her brief, forcing the court to sift through the Local Rule 56.1 statements and responses to determine the background and sequence of events. *Liner v. FCA US LLC*, 2021 WL 4244750 (N.D. Ill. Sept. 17, 2021). The court described this as "both improper practice and poor lawyering." *Id.* at *1.

Frederick also demonstrated a lack of diligence in *Brown v. Crete Monee Community Unit School District No. 201 U*, 2022 WL 1620024 (N.D. Ill. May 23, 2022), where she filed a motion to compel further discovery responses to requests that had been served a year earlier. The court denied the motion, concluding that the plaintiff had not identified any valid reason for failing to address this issue previously. *Id.* at *2 (observing that "ignoring deadlines is the surest way to lose a case"). Moreover, she had not shown that the information she sought was relevant to any of her remaining claims. Even when challenged on this ground, plaintiff ignored the issue and went on a completely different tangent, attaching a PowerPoint presentation regarding the percentage of Black students that make up nationwide school-related arrests.

Frederick demonstrated an inability or unwillingness to work professionally with opposing counsel in *Gamble v. Fiat Chrysler Autos.*, 2019 WL 13254504 (N.D. Ill. July 17, 2019). There, she moved to disqualify the defendant's attorney, in part, *because counsel handed the plaintiff his business card at the beginning of the plaintiff's deposition*. As the *Gamble* court explained, it is a common practice for attorneys to hand out business cards to the participants at a deposition. As an experienced lawyer, Frederick knew, or should have known, that this was a professional courtesy and not misconduct. Frederick also argued that opposing counsel should be disqualified for talking to the plaintiff at the deposition outside of

Frederick's presence (which opposing counsel denied). However, when the presiding judge offered to hold an evidentiary hearing (the only feasible way of resolving this factual dispute) Frederick declined. *Id.* at *2.

Frederick has demonstrated questionable professional practices when representing herself, as well. Frederick was sued as the beneficiary of a land trust when she failed to make monthly mortgage payments on the condominium in which she resided. *Manufacturers Hanover Mortgage Corp. v. Chicago Title & Trust Co., et al.*, 1985 WL 3617 (N.D. Ill. Nov. 1, 1985). She raised untimely, meritless affirmative defenses and alleged that the default was caused by circumstances beyond her control. The court noted that Frederick had resided in the premises for some 18 months without making any payments and the reason for her default was not relevant to any issue in the foreclosure action. The court granted summary judgment in favor of the plaintiff and ordered that the property be sold. *Id.* at *4.

The opinion in *Frederick v. Easty*, 2015 WL 603884 (N.D. Ill. Feb. 11, 2015), reveals additional unprofessional conduct. In that matter, Easty agreed to sell Frederick a home for $822,000 in cash, which she assured him she would possess in the near future due to recently having "won a seven-figure case." Frederick and Easty signed a purchase contract on May 28, 2013, and were scheduled to close on or about June 11, 2013. Shortly after signing the contract, Frederick told Easty that she would not have the money by the closing date. Nevertheless, Easty granted Frederick's request to move into the property prior to the closing date, which had been extended to June 26, 2013.

The closing did not occur, "presumably because Frederick did not have money to pay the purchase price." *Id.* at *2. After a series of extensions and aborted closings, Easty entered into a contract to sell the property to a different buyer for a higher price. Frederick refused to

vacate the property and Easty was forced to resort to eviction proceedings, in which he was successful. Frederick finally surrendered the property after living there rent-free for nearly a year. That did not stop her from suing Easty for damages under the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq*. The court granted Easty's motion for summary judgment on all claims and granted sanctions under Rule 11, concluding that Frederick's claims were frivolous and that she brought the lawsuit for the improper purposes of causing unnecessary delay and needlessly increasing the cost of litigation. *Id*. at *10.

Some of Frederick's most egregious conduct occurred in *Mallory v. Rush University Medical Center* and resulted in the filing of a disciplinary complaint which Frederick did not disclose in her PHV motion.[3] 2021 WL 458547, at *7 (N.D. Ill. Feb. 9, 2021). Frederick represented a plaintiff who claimed injuries as a result of a slip and fall accident in the defendant's hospital. The litigation did "not go[] smoothly (to put it mildly)." *Id.* at *1. Frederick repeatedly asked for last-minute extensions, citing reasons including a foot sprain, car trouble, and a heavy workload. She also cited "the effort that it took to send her two daughters off to college," just as she had done in 2019.

Particularly troubling are Frederick's *ad hominem* attacks on Magistrate Judge Young Kim. Frederick repeatedly expressed her belief that the magistrate judge was unfair, dishonest, and biased against her and her client, who are both African American females. In her February 25, 2019 motion to extend the fact discovery deadline, Frederick asserted that the magistrate judge appeared "ready and willing to favor procedure over substance and chop the Plaintiff off

---

[3] Magistrate Judge Young Kim filed a complaint with the Illinois Attorney Registration and Disciplinary Commission against Frederick based on her conduct in this case. During the May 12, 2023 hearing on her PHV motion, Frederick stated that this complaint had been resolved in her favor.

at the knees" and that she did not believe Mallory could "get a fair hearing in fro[nt] of" the magistrate judge.[4] [Chicago Civil Action No. 1: 18-CV-4364, Record No. 37, pp. 5-6] The magistrate judge characterized these assertions as "vitriolic attacks" that disrupted the administration of justice and violated several model rules of professional conduct, such as ABA Model Rules 3.5(d), 8.2(a), and 8.4(d). *Mallory*, 2021 WL 458457, at *6. Frederick went on to state, "Judge Kim's knee is on my neck and I cannot breathe." [*Id.*, Record No. 171, p. 10]

Based on the foregoing, Frederick's motion for PHV admission will be denied in this case. While Frederick has agreed to abide by the rules of the Kentucky Supreme Court governing professional conduct, her prior conduct indicates that she is unlikely to do so. Based on her actions in *Mallory v. Rush*, Magistrate Judge Kim determined that she engaged in conduct that was intended to disrupt a tribunal; that she made statements she knew to be false or with reckless disregard as to their truth or falsity concerning the qualifications or integrity of a judge; and engaged in conduct that was prejudicial to the administration of justice. *See* 2021 WL 458547, at *6 n.8. Such activity would be in violation of the Kentucky Rules governing professional conduct, as well. While it appears that no formal disciplinary action has been taken against Frederick at this point, there is sufficient proof that she has committed numerous professional conduct violations.

Given attorney Frederick's past unwillingness or inability to abide by court orders and local rules in her home district in Illinois, the Court believes it unlikely that she would do so

---

[4] Frederick also expressed frustration at Magistrate Judge Kim's purported lack of understanding with respect to her tardy filings and reported "yell[ing]" at Judge Kim's courtroom deputy.

here, in a district that is unfamiliar to her. And it is telling that Frederick requested a continuance in the hearing on this motion, which would have inevitably caused continued delays in this case.

During the hearing on this matter, Frederick advised the Court that she had a difficult year in 2022, including health issues and the death of her mother, which likely contributed to the problems she experienced in *Outley*. Frederick also reminded the Court that she had represented litigants in hundreds of cases with no problems. While the Court is sympathetic to the issues Frederick faced in 2022, the conduct displayed in *Outley* is simply unacceptable. And while Frederick has undoubtedly worked many cases without difficulty, the issues discussed above demonstrate a clear pattern of conduct that is outside the realm of acceptable professional practice before this Court. These reasons, including Frederick's failure to disclose the disciplinary complaint filed by Magistrate Judge Kim, are grounds for denying her PHV application. Accordingly, it is hereby

**ORDERED** that the motion for leave to appear *pro hac vice* [Record No. 39] is **DENIED**.

Dated: May 15, 2023.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky